IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| JPB HOLDING, INC., JAMES BRINSFIELD, DEC'D, and JANET BRINSFIELD, | ) ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 150319N |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | |
| Defendant. | ) | **FINAL DECISION** |

This Final Decision incorporates without change the court's Decision, entered March 7, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiffs appeal Defendant's Notice of Deficiency Assessment dated April 29, 2014, for the 2011 tax year. The parties agreed at the case management conference held June 4, 2015, to submit the matter to the court on cross motions for summary judgment. The parties agreed to and adhered to a schedule for filing stipulated facts, stipulated exhibits, motions for summary judgment, and responses. A hearing by telephone was held on December 3, 2015. Douglas A. Capps, CPA, appeared on behalf of Plaintiffs. Gwendolyn S. Hessong (Hessong), CPA, testified on behalf of Plaintiffs. Celita C. Holt (Holt) appeared and testified on behalf of Defendant. The parties stipulated to Exhibits 1 through 9 and Exhibits A through F. Plaintiffs filed their Statement for Costs and Disbursements on December 9, 2015, and Defendant filed its Objection to Award of Costs and Disbursements on December 16, 2015.

/ / /

/ / /

## I. STATEMENT OF FACTS

JPB Holding, Inc. (JPB) is a holding company with no operations itself. (Stip Facts at ¶16.) JPB was formerly Brinsfield's Boat Basin, Inc. (Company); on November 16, 2005, Company filed amended Articles of Incorporation to change its name to JPB. (*Id.* at ¶7.)

Company was incorporated in Oregon on September 6, 2002. (Stip Facts at ¶1.) Also on September 6, 2002, James Brinsfield (Brinsfield) transferred the assets of the unincorporated entities, Brinsfield Boat Basin (Boat Basin) and Fabulous 50's Motor Car Company (Motor) to Company, in exchange for stock and securities of Company.[1] (*Id.* at ¶2.) Company assumed the liabilities of the two unincorporated entities. (*Id.*) Brinsfield was the sole shareholder of Company. (*Id.*) The parties stipulated that an unsecured promissory note (Note Payable) was issued to Brinsfield by Company. (*Id.* at ¶3.) However, the Note Payable referenced in the Stipulation of Facts was executed between JPB and Brinsfield, with an effective date of September 6, 2002. (*See* Ex 2.)

On January 1, 2005, Brinsfield transferred the assets of Valley View Stables (Stables) in exchange for stock and securities of Company, and Company assumed the liabilities of Stables.[2] (Stip Facts at ¶4.) The debt assumed by Company in the exchange of Stables "is collateralized by the business equipment and real estate located at 10037 SE 172nd Ave in Happy Valley, Oregon." (*Id.* at ¶5.) "James and Janet Brinsfield personally borrowed the debt collateralized by the buildings and land used in the operations of [Stables]. This debt [is comprised of] mortgage line of credit loans with Wells Fargo Bank and 1st Independent Bank." (*Id.* at ¶6, citing Ex 4.)

///

---

[1] Motor "is a classic automobile repairing, renovating and selling business." (Stip Facts at ¶10.)

[2] Stables "is a horse raising, breeding and training business." (Stip Facts at ¶9.)

JPB "sold all of the business assets of [Boat Basin] on November 25, 2005." (Stip Facts at ¶8.) Thus, as of the 2011 tax year, JPB held only the assets of Motor and Stables.

Motor and Stables maintained accounting records using the cash basis method of accounting under the Generally Accepted Accounting Principles (GAAP). (Stip Facts at ¶13.) The records contained the balances of the assets, liabilities, equity, income and expenses of Motor and Stables. (*Id.*) The accounting records of Motor and Stables were consolidated and recorded into the accounts of JPB through the use of a general consolidating journal entry at the year end. (*Id.* at ¶14–15) This accounting journal entry debited assets and expenses, and credited liabilities and income. (*Id.*) The difference between those debit and credit entries, which equaled shareholder equity, was posted to a "Note Payable Shareholder" account. (*Id.*)

JPB has annually reported the consolidated accounting information to tax authorities by filing consolidated corporate income tax returns with the Internal Revenue Service and the Oregon Department of Revenue. (Stip Facts at ¶17.) The parties agreed that JPB's 2011 Form 1120S, U.S. Income Tax Return for an S Corporation, (Form 1120S) reports a beginning balance for Note Payable Shareholder of $297,937 and an ending balance of $223,524.[3] (*Id.* at ¶19; Ex A at 1.) Form 1120S reports beginning and ending balances of "Building and other depreciable assets" of $620,446 and $615,446, respectively. (Stip Facts at ¶20; Ex A-1.)

Defendant audited the 2010 and 2011 tax returns of JPB and, for the 2010 tax year, decreased the ending balance of Note Payable Shareholder by $117,734, to $180,800. (Stip Facts at ¶21; Ex C at 3.) In its 2010 Auditor's Report, Defendant explained that "[t]here was a decrease to the loans from shareholder of $117,734, as shown on the tax return and the basis calculation worksheet." (Ex C at 3.) Defendant noted that the decrease "was not labeled as a

---

[3] The return attached as an exhibit reports "Other liabilities" as $297,937 (beginning) and $331,262 (ending). (Ex A at 1.)

distribution or loan repayment," but concluded it was a loan repayment "because the notes payable account on the tax return decreased by $117,734." (*Id.*) Defendant determined that, because "the adjusted basis of the loan was less than the face value, this resulted in a gain." (*Id.* at 1.) Defendant calculated the gain on the repayment to be $17,043. (*Id.* at 1, 3.)

For the 2011 tax year, Defendant "disallowed" an accounting journal entry made to Note Payable Shareholder in the amount of $606,482.43. (Stip Facts at ¶22.) In its 2011 Auditor's Report, Defendant explained that it was "unknown how this number was derived; therefore it has been disallowed." (Ex C at 4.) Defendant wrote that it asked Plaintiffs "to provide information regarding the shareholder loan, inclusive of cancelled checks and bank statements showing that loans were received." (Ex C at 3.) In response, Plaintiffs provided bank statements but not cancelled checks. (*See id.*) Defendant found that Plaintiff failed to provide adequate substantiation of the journal entry amount. (Def's Mot Summ J at 1–2.) "Defendant did not make a credit adjustment for $117,734 or $606,482.43 to an account in the accounting records of [JPB]." (Stip Facts at ¶23.) The combination of Defendant's adjustments to Note Payable Shareholder created a negative balance of $392,357.43. (*Id.* at ¶24.) Defendant determined that the negative balance in Note Payable Shareholder constituted a distribution in excess of basis to Brinsfield, resulting in a taxable gain. (*Id.* at ¶25.)

Hessong testified that the $606,482.43 consolidating journal entry was made by JPB's bookkeeper and that the entry was the type required by JPB's accounting software (QuickBooks) "simply to make it balance."

/ / /

/ / /

/ / /

## II. ANALYSIS

Plaintiffs challenge the adjustments made by Defendant to JPB's 2010 and 2011 corporate income tax returns that resulted in Defendant's determination that Brinsfield realized a taxable gain in 2011. (Ptfs' Mot Summ J at 4.)

The Oregon Legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code relating to the measurement of taxable income of individuals, estates and trusts, modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1).[4] "Any term used in this chapter has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in this chapter." ORS 316.012.

Generally, items of income or loss of an S corporation pass through to its shareholders. IRC § 1366(a). "An S corporation must report, and a shareholder is required to take into account in the shareholder's return, the shareholder's pro rata share, whether or not distributed, of the S corporation's items of income, loss, deduction or credit * * *." Treas Reg 1.1366-1(a). "The aggregate amount of losses and deductions taken into account by a shareholder * * * for any taxable year shall not exceed the sum of" the shareholder's adjusted stock basis and the shareholder's adjusted debt basis. IRC § 1366(d)(1). Disallowed losses and deductions may be carried over to the succeeding tax year. IRC § 1366(d)(3). The shareholder's stock and debt bases must be adjusted as provided in IRC section 1367. If an S corporation with no accumulated earnings and profits makes a distribution in excess of the adjusted stock basis, "such excess shall be treated as gain from the sale or exchange of property." IRC § 1368(b)(2).

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

In its audit of JPB's 2010 and 2011 tax returns, Defendant decreased the 2010 ending balance of Note Payable Shareholder by $117,734 based on Plaintiffs' basis calculation worksheet showing a $117,734 decrease to "loans to corporation"; and Defendant disallowed the $606,482 credit journal entry to Note Payable Shareholder because Plaintiffs failed to substantiate that credit journal entry. Defendant determined that the combined effect of those adjustments was a negative balance in Note Payable Shareholder of $392,357, which Defendant determined to be a distribution in excess of basis to JPB's shareholder, Brinsfield.

Plaintiffs make several arguments in opposition to Defendant's determination that Brinsfield realized a taxable gain in 2011. Plaintiff's arguments can be summarized as follows:[5]

A. Defendant's audit determination contradicted the agreed upon Stipulation of Undisputed Facts and Exhibits.

B. Plaintiffs provided substantiation for the $606,482.43 consolidating credit journal entry so that Defendant's disallowance of the journal entry on the basis of lack of substantiation was erroneous.

C. Defendant incorrectly classified the distribution as taxable income from a distribution in excess of basis.

(*See* Ptfs' Mot Summ J at 4–5; *see also* Ptfs' Resp at 6, 9.)

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. Plaintiffs must establish their claim "by a preponderance of the evidence," or the more convincing or greater weight of the evidence. *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971).

/ / /

---

[5] Plaintiffs advanced an additional argument, that "Defendant is required to use the same methods of accounting when applying the Defendant's adjustments to the Plaintiffs' accounting records that the Plaintiff and the Plaintiffs' businesses use." (Ptfs' Mot Summ J at 11–13.) In the court's view, Plaintiffs' disagreement with the accounting methods used by Defendant is, at its core, a disagreement over the effect of Defendant's adjustments to Note Payable Shareholder. The court will address that issue through its discussion of Plaintiffs' other arguments.

A.    *Contradiction of Stipulated Facts and Exhibits*

The first issue raised by Plaintiffs is whether Defendant's audit determination contradicts the stipulated facts and exhibits. (Ptfs' Mot Summ J at 6.) The Stipulation of Facts signed by both parties details the beginning and evolution of JPB's corporate structure, as well as the accounting methods of JPB and its unincorporated subsidiaries, Motor and Stables. Plaintiffs contend that, because Defendant stipulated to the existence of a set of facts at a particular point in time as reported on Plaintiffs' financial statements, Defendant has corroborated the underlying transactions reflected in those financial statements, including the $606,482 consolidating journal entry necessary to balance the balance sheet. (Ptfs' Mot Summ J at 9.)

Defendant responds that it did not stipulate to the validity of the accounting transactions recorded by Plaintiffs, nor did it agree that the note payable entry at issue was substantiated. (Def's Resp at 2.) Defendant did not accept the transactional methodology that produced Plaintiffs' final balances after the consolidating journal entry was made. (*Id*. at 2–3.) Defendant wrote that "journal entries are not proof that contributions were actually made." (*Id.* at 3.)

Plaintiffs' logic is unpersuasive. An account balance reflected on a financial statement could be calculated in any number of ways and the method of that calculation is critical to the validity of the account's ending balance. Whether amounts reported are adequately substantiated is a separate issue. There is no dispute that the financial statements provided as exhibits were prepared by Plaintiffs. However, Defendant did not agree that all amounts stated on Plaintiffs' financial statements were substantiated—indeed, Defendant explicitly disagrees that Plaintiffs substantiated the credit to Notes Payable Shareholder. Plaintiffs have failed to prove that Defendant's determination contradicts the Stipulation of Facts and Exhibits.

/ / /

B.      *Substantiation of Consolidating Entry*

Plaintiffs argue that they offered sufficient substantiation for the consolidating journal entry in the amount of $606,482, which Defendant disallowed.

Defendant explained that "[c]redit entries on a notes payable from shareholder increase that notes payable; an increase to notes payable shareholder indicates that the shareholder made contributions of some sort for the corporation; an increase to notes payable by the shareholder would typically increase the shareholders debt basis in a corporation." (Def's Resp at 3.) Defendant wrote that it requested documentation from Plaintiffs "to support the credit to Notes Payable," and, in response, Plaintiffs "provided the journal entries and mortgage loan documents." (*Id.*) In Defendant's view, the "journal entries are not proof that contributions were actually made. Furthermore, the mortgage loan documents did not show how they tied in with the credit to Notes Payable." (*Id.*)

ORS 314.425(1) states, in pertinent part, that taxpayers must be ready to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" OAR 150-314.425(2)(a) further states that "[a] taxpayer shall maintain all records that are necessary to a determination of the correct tax liability under Chapters 316, 317 or 318.[6] All required records shall be made available on request by the Department of Revenue or its authorized representatives as provided for in ORS 314.425."

When questioned about the amount of the credit entry during the hearing, Hessong testified that the entry was made by JPB's bookkeeper because QuickBooks required the entry to balance the books. Plaintiffs provided no further evidence that any contributions were made to substantiate the $606,482 credit entry (increase) to Note Payable Shareholder. In response to

---

[6] References to OAR are to the Oregon Administrative Rules (OAR).

Defendant's request for documentation during the audit, Plaintiffs provided Defendant with mortgage loan documents and bank statements. (Ex E at 3–6.). Only one document provided pertains to the 2011 tax year: A Wells Fargo bank statement from December 2011. (*See id.* at 3.) Another document provided was a 2012 mortgage interest statement for Plaintiffs' personal residence. (*See* Ex E at 4; Stip Facts at ¶12.) The court agrees with Defendant that the documentation provided by Plaintiffs do not substantiate the $606,482 credit journal entry to Note Payable Shareholder.

If Plaintiffs had complied with the formalities of a third-party business loan and proven the existence of a bona fide debt, or even provided mortgage documents and bank statements to justify the consolidating journal entry amount, the note payable journal entry may have been accepted by Defendant. Despite ample opportunity throughout the audit and this court proceeding, Plaintiffs never provided adequate substantiation for the $606,482 credit journal entry to Note Payable Shareholder.

C.      *Distribution as Taxable Income*

As a result of its disallowance of the $606,482 credit to Note Payable Shareholder, Defendant calculated a negative balance of $392,357. Plaintiffs argue that Defendant incorrectly classified the negative balance of $392,357 as a taxable distribution in excess of basis.

Plaintiffs contend that for the negative balance of $392,357 to be treated as a distribution, Plaintiffs must have actually received that distribution or be in constructive receipt of that distribution, which Plaintiffs maintain did not occur in this case. (*See* Ptfs' Mot Summ J at 14) Generally, "[g]ains, profits, and income are to be included in gross income for the taxable year in which they are actually or constructively received by the taxpayer unless includible for a different year in accordance with the taxpayer's method of accounting." Treas Reg 1.451-1(a).

The "constructive receipt" doctrine holds that it is not necessary that a taxpayer always receive money or property for income to be recognized because constructive receipt occurs when income is credited and made available to the taxpayer. *See* Treas Reg 1.451-2(a). "However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." *Id.* Plaintiffs argue that they "did not receive a distribution of $392,357 either in cash or by constructive receipt." (Ptfs' Mot Summ J at 15.)

In its Response, Defendant agreed with Plaintiffs that "[o]nly the amounts that were distributed to or constructively received by the shareholders should have been a distribution." (Def's Resp at 6.) Defendant revised its prior calculation of Plaintiffs' taxable gain:

> "Valley View Stables balance sheet showed that distributions were $312,745.29.
> * * * As the distribution is in excess of their stock basis as shown on their basis
> calculation provided * * *, according to IRC 1368, the excess is a taxable gain to
> the shareholder. The reduced gain should be $287,597.29 ($312,745 updated
> distribution - $20,498 income per basis calculation - $4,650 per capital
> contributions determined during the audit)."

(*Id.*)

Despite Defendant's revision, the parties fundamentally disagree as to the effect of Defendant's disallowance of the $606,482 credit to Notes Payable Shareholder. Defendant classified the resulting negative balance as a distribution. Plaintiffs contend that

> "[t]he disallowance by the Defendant of the year end consolidating general
> journal credit to Note Payable Shareholder of $606,482 increased JPB Holding
> Inc shareholder's equity by $606,482. This increase to the JPB holding Inc
> shareholder's equity is a contribution to the capitol of the JPB Holding Inc by the
> Plaintiffs. This contribution by the Plaintiffs increased the Plaintiffs' shareholder
> stock basis in the S corporation JPB Holding Inc by $606,482."

(Ptf's Mot Summ J at 13.)

The United States Tax Court "has looked to [IRC] section 1012 when defining 'basis' for purposes of a shareholder's stock in an S corporation." *Foust v. Comm'r*, 70 TCM (CCH) 928,

1995 WL 581090 at *2 (US Tax Ct). Section 1012(a) states that "[t]he basis of property shall be the cost of property * * *." "The cost is the amount paid for such property in cash or other property." Treas Reg §1.1012-1(a). In *Foust*, the court held that a shareholder could not claim basis credit where they failed "to demonstrate the necessary economic outlay." *Foust*, 1995 WL 581090 at *2. Thus, a shareholder must demonstrate the requisite economic outlay necessary to claim basis. *See id.*

As discussed above, Plaintiffs failed to satisfy the burden of proof on this issue because they did not provide evidence to substantiate a basis increase, such as documentation of money or property exchanged for a note. The mere inference that shareholder basis has increased because a journal entry indicates that it should fails to meet the requisite burden to prove that Plaintiffs made an economic outlay that would increase shareholder basis. *See* ORS 305.427. Accordingly, the court accepts Defendant's revised calculation that Plaintiffs' 2011 taxable distribution in excess of basis was $287,597. *See* ORS 305.575 ("the tax court has jurisdiction to determine the correct amount of deficiency," even if that amount differs from the assessment determined by the Department of Revenue.)

### III. COSTS AND DISBURSEMENTS

Tax Court Rule-Magistrate Division (TCR-MD) 16 B allows for the award of costs and disbursements to "the prevailing party." To request costs and disbursements, a party must file a statement of costs and disbursements "not later than 14 days after the entry of a decision * * *." TCR-MD 16 C(1). Plaintiffs' Statement for Costs and Disbursements was filed on December 9, 2015, before the court issued this Decision; it was therefore filed prematurely. Moreover, because Plaintiffs failed to carry the burden of proof, they are not the prevailing party. Consequently, Plaintiffs' request for costs and disbursements must be denied

## IV. CONCLUSION

After careful consideration of the parties' written arguments, testimony, and evidence, the court concludes that Plaintiffs failed to carry the burden of proof. Defendant provided sufficient evidence to support its disallowance of the $606,842 credit journal entry to note payable shareholder, resulting in a taxable distribution of $287,597 to Plaintiffs in 2011. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied. Defendant's revised determination that Plaintiffs received a taxable distribution of $287,597 in 2011 is upheld.

IT IS FURTHER DECIDED that Plaintiffs' request for costs and disbursements is denied.

Dated this ＿＿ day of March 2016.

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on March 25, 2016.*